Argued and submitted March 7, judgment of Tax Court affirmed April 7, 2011

Rebecca Gwen FORCE,
Personal Representative of the
Estate of William R. Pierson, Deceased,
*Plaintiff-Appellant,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant-Respondent.*

(TC 4886; SC S058252)

350 P3d 179

Henry C. Breithaupt, Judge.

David C. Force, argued the cause and submitted the briefs for appellant.

Douglas Adair, Senior Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was John R. Kroger, Attorney General.

LANDAU, J.

### LANDAU, J.

At issue in this case is the inheritance tax liability of the estate of decedent, based on the value of a farm that he owned at the time of his death. Plaintiff, the personal representative of the estate, concluded that the estate owes no state inheritance tax. The Department of Revenue (department) disagreed, concluding that the estate owes $26,767, plus penalties and interest, and issued a notice of deficiency in that amount. Plaintiff then initiated this action in the Oregon Tax Court challenging the deficiency notice. The parties filed cross-motions for summary judgment based on the undisputed facts. The Tax Court granted the department's motion, denied plaintiff's, and entered judgment in favor of the department. Plaintiff appeals, seeking reversal of the judgment and a determination that the estate owes no Oregon inheritance tax. We affirm the decision of the Tax Court.

## I. BACKGROUND

### A. *The Regulatory Context*

To provide context for the parties' dispute, we begin with a brief summary of the applicable federal and state tax laws, before turning to the facts of this case and the Tax Court's decision.

For many years, the amount of Oregon inheritance tax that an estate was obligated to pay was determined by reference to federal estate tax law, as provided in the Internal Revenue Code (IRC) and its implementing regulations. In brief, the federal estate tax was determined by a three-step process.

First, the value of a taxable estate had to be established. IRC § 2051 (2000). Depending on the nature of the property, some portion of its value could be exempt. For example, under IRC § 2032A (2000), a large portion of the value of family farms was exempt from estate taxation, provided that the land continued to be operated as a farm for at least 10 years; if the farm was later sold or was put to something other than a qualified use before the end of the 10-year period, an additional tax accounting for the amount that was exempted was imposed, IRS § 2032A(c)(1) (2000), which was

due six months after the date the property was sold or put to a nonqualified use, IRC § 2032(c)(4) (2000).

Second, an estate tax had to be determined. IRC § 2001 (2000). The amount of the tax was determined by reference to a tax table keyed to various ranges in value of the taxable estate.

Third, the resulting tax could be reduced by applicable tax credits, two of which are relevant to this case. One, known as the "unified credit," applied under IRC § 2010 (2000) to the estate of any decedent. The other, known as the "state death tax credit," applied under IRC § 2011 (2000) if the estate was subject to any state death tax (not all states impose death taxes). The state death tax credit was determined by reference to a maximum amount allowable—a percentage of the value of the taxable estate—subject to reduction depending on the size of the unified credit in relation to the estate's tax liability; the actual amount of a state death tax credit could be smaller than the maximum allowable, for example, to avoid creating entitlement to a refund. IRC § 2011(f) (2000). The net tax was then due and payable nine months from the date of the decedent's death. IRC § 6075(a) (2000); Treas Reg § 20.6075-1 (2000); Treas Reg § 20.6151-1 (2000).

Under Oregon law, the state inheritance tax liability was then directly tied to the federal estate tax liability, both as to amount and as to the date on which any state inheritance tax was to be paid. Concerning the amount, ORS 118.010(2) provided that the state inheritance tax "shall equal the maximum of the state death tax credit allowable against the federal estate tax under section 2011 of the Internal Revenue Code." Concerning the timing of payment, ORS 118.100(1) provided that state inheritance tax "shall be paid to the Department of Revenue on the date that the federal estate tax is payable," which, under the law at the time, was generally nine months after the date of death. *See* OAR 150-118.100(1) (2000) (referring to federal regulations concerning timing of payment). Both of those provisions were enacted in 1997 and remain in their original form to date. Or Laws 1997, ch 99, §§ 7-8.

In 2001, Congress significantly amended the federal estate tax statutes. In the Economic Growth and Tax Relief Reconciliation Act of 2001, Pub L No 107-16, 115 Stat 38 (codified as amended in scattered sections of 26 USC), it provided for the progressive phase-out of the federal estate tax, resulting in no state death tax credit by 2005 and no federal estate tax due by 2010. The amendments to the federal estate tax statutes—in particular, the eventual phase-out of the state death tax credit entirely by 2005—created potential problems for Oregon's inheritance tax scheme, given that the state law was explicitly tied to the federal law. Left unchanged, the Oregon inheritance tax would have phased out with its federal counterpart. (In 2010, Congress again amended the federal estate tax statutes resulting in the reinstatement of the federal estate tax, but that change does not affect the disposition of this case. *See* Tax Relief, Unemployment Insurance Reauthorization, and *Job Creation Act of* 2010, Pub L No 111-312, § 301, 124 Stat 3296, 3300 (codified as amended in scattered provisions of 26 USC).)

In 2003, the Oregon legislature addressed the matter by amending the state inheritance tax statutes. The legislature found that the 2001 amendments to the federal estate tax laws produced an "unintended consequence" that created "difficulties in the administration and enforcement of the Oregon inheritance tax." ORS 118.009. To avoid the *de facto* phase-out of the Oregon inheritance tax and to "ensure that the level of tax compliance with the Oregon inheritance tax" is maintained, ORS 118.009, the legislature, in effect, de-coupled the state inheritance tax law from current federal estate tax law and instead permanently linked it with the federal estate tax law as it existed before the 2001 amendments. Under the terms of the new Oregon statute, any references in the Oregon inheritance tax law to the federal estate tax statute mean "the federal Internal Revenue Code as amended and in effect on December 31, 2000, except where the Legislative Assembly has specifically provided otherwise." ORS 118.007. The 2003 amendments apply to all instances in which the decedent dies on or after January 1, 1998. Or Laws 2003, ch 806, § 3(1), *compiled as a note after* ORS 118.007 (2003).

The 2003 amendments left unchanged a number of existing provisions in the state inheritance tax statute that referred to federal tax law. Among them are ORS 118.010(2), which continues to provide that the state inheritance tax "shall equal the maximum amount of the state death tax credit allowable against the federal estate tax under section 2011 of the Internal Revenue Code," as well as ORS 118.100(1), which still provides that any state inheritance tax "shall be paid to the Department of Revenue on the date the federal estate tax is payable." The proper interpretation of those two provisions is the principal focus of the parties' arguments in this case.

B.  *Facts*

The relevant facts are not in dispute. Decedent, William R. Pierson, died on January 1, 2003. The primary asset of his estate is the Pierson family farm, comprising over 237 acres of land just outside of Ashland, Oregon. Plaintiff, as we have noted, is the personal representative of his estate. In 2004, plaintiff filed a federal estate tax return. In that return, she reported the fair market value of the farm as $1,694,100. She then requested an exemption from that value of approximately $1,480,000 under the provision of the Internal Revenue Code that we have described pertaining to the valuation of family farms, IRC § 2032A. That left a net taxable estate (after various other adjustments) of approximately $242,000. Under the version of the federal estate tax law in effect at the time—which, as we have described, eventually phased out the tax entirely—the first $1 million of a net taxable estate was exempt from federal estate taxation. IRC § 2010(c) (2006). Accordingly, plaintiff reported in the return a federal estate tax of zero. Because she reported no federal estate tax liability, she also reported a state death tax credit of zero.

The Internal Revenue Service (IRS) audited the estate's return. The IRS determined that plaintiff had miscalculated the amount of the exemption available under IRC § 2032A and that the correct amount of the exemption was $840,000 (that amount is the same under both the pre-2001 code and the version of the code that the IRS applied). That left a net taxable estate of approximately $854,100. But,

because the applicable federal estate tax law in effect at that time exempted the first $1 million in estate value from taxation, IRC § 2010(c) (2006), the net result was as plaintiff reported, namely, zero federal estate tax and zero state death tax credit.

Plaintiff filed a copy of her federal tax return with the department. The department determined that, based on the federal estate tax law as it existed on December 31, 2000, the estate would not have been subject to the phase-out contained in the current version of the federal estate tax law. Because of that, the department determined, the $854,100 in net taxable estate would have been subject to taxation under the federal tax law as of December 31, 2001, and would have resulted, after various adjustments, in a state death tax credit against that federal estate tax liability in the amount of $26,767. Accordingly, the department issued a notice of deficiency for $26,767, plus penalties and interest.

C. *The Tax Court Proceeding*

Plaintiff then initiated this action against the department contesting the assessment. Plaintiff moved for summary judgment, contending that, because the IRS had determined that the state death tax credit was zero, no state inheritance tax was due. Plaintiff argued that the IRS audit constituted a binding federal determination of the estate's federal tax liability, which the department lacks authority to alter. That is so, plaintiff asserted, because ORS 118.010(2) defines the amount of Oregon inheritance tax due as the "maximum amount of the state death tax credit allowable" under federal law, and, in this case, the IRS determined that the state death tax credit allowable under federal law was zero. It is also so, she argued, because ORS 118.100(1) provides that no state inheritance tax is due until a federal estate tax is "payable," and, in this case, the IRS determined that none is payable. In each case, plaintiff reasoned, the key determinant—the amount of state death tax credit "allowable" and the date that any federal estate tax is "payable"— are matters of federal law, which, under the Supremacy Clause of the federal constitution, already have been conclusively established by the IRS.

In a cross-motion for summary judgment, the department responded that plaintiff's arguments were based on a false premise, namely, that the IRS determination of the estate's tax liability under the post-2001 federal tax law had any bearing on the estate's state inheritance tax liability, which, under ORS 118.007, is determined under *pre-2001* federal estate tax law. The department argued that plaintiff's reliance on ORS 118.010(2) and ORS 118.100(1) in support of her argument to the contrary is misplaced. The department observed that the former statute merely provides that the amount of state inheritance tax liability is the amount of the state death tax credit "allowable" under federal law—that is, the amount allowable under the pre-2001 federal tax law— not the amount actually allowed under later versions of federal law. Similarly, the department argued that the latter statute merely provided that the state inheritance tax is due when a federal estate tax is "payable," that is, under the pre-2001 federal law. Any other reading of the statutes, the department argued, would directly conflict with the express provisions of ORS 118.007. The Tax Court agreed with the department and granted its motion for summary judgment. This direct appeal followed.

## II.  ANALYSIS

On appeal, plaintiff contends that the Tax Court erred in granting the department's motion for summary judgment. In support of that contention, plaintiff essentially reprises the arguments that she advanced to the Tax Court, *viz.*, that, under both ORS 118.010(2) and ORS 118.100(1), the IRS audit that established a state death tax credit of zero and that no federal estate tax was due under current federal tax law is controlling. In response, the department likewise reprises the arguments that it offered in support of its summary judgment motion.

Thus framed, the parties' contentions reduce to a question of the proper interpretation of state statutes, specifically, ORS 118.010(2) and ORS 118.100(1). That is a question of law, governed by the principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). Our goal is to determine the intended meaning

of those statutes by examining their text in context along with relevant legislative history and, if necessary, other aids to construction. *Gaines*, 346 Or at 171-73. In that regard—and, contrary to plaintiff's contention in this case—we note that our focus is on the meaning of those Oregon inheritance tax statutes, which presents a question of state, not federal, law. The two statutes may refer to taxes "allowable" or "payable" under the federal "Internal Revenue Code," but the question is what the Oregon legislature intended when it used those terms in the state inheritance tax statutes. *See Morris v. Dept. of Rev.*, 320 Or 579, 584 n 5, 889 P2d 1294, *cert den*, 516 US 816 (1995) ("Federal tax law does not control the tax law of Oregon.").

With the foregoing in mind, we turn to the wording of each of the relevant statutes. We begin with ORS 118.010(2), which provides that the state inheritance tax equals "the maximum amount of the state death tax credit allowable against the federal estate tax under section 2011 of the Internal Revenue Code." The key phrasing is the reference to the state death tax credit that is "allowable * * * under section 2011 of the Internal Revenue Code." That phrasing is significant in two respects.

First, the statute is expressed in terms of the state death tax credit that is "allowable," not any credit that was actually allowed. In ordinary usage, the term "allowable" refers to something that is "PERMISSIBLE : not forbidden : not unlawful or improper." *Webster's Third New Int'l Dictionary* 58 (unabridged ed 1993). It connotes something that exists in the abstract or has yet to occur, as opposed to something that already has been allowed. As it turns out, that is consistent with the manner in which the federal estate tax law operates.

As we have noted, under the law in effect on December 31, 2000, section 2011 of the Internal Revenue Code authorizes an estate to take a state death tax credit. The amount of that credit is expressed both in terms of a maximum allowable, based on the value of the taxable estate, and, where appropriate, in terms of a lesser amount actually allowed. Thus, for example, in cases in which the maximum state death tax credit allowable would result in a refund to the estate, the amount that is actually allowed to be taken is

a lesser amount. IRC § 2011(f) (2000). In that context, the wording of ORS 118.010(2) becomes significant, because the statute refers to state inheritance tax liability in terms of "the maximum amount of the state death tax credit allowable," which under the federal tax law is different from the amount that is actually allowed. Thus, plaintiff's contention that the statutory reference to the state death tax credit "allowable" refers to what the estate was actually allowed fails to account for that distinction.

Second, ORS 118.010(2) is phrased in terms of the state death tax credit that is allowable "under section 2011 of the Internal Revenue Code." Taken in isolation, it perhaps would be permissible—as plaintiff contends in this case—to read the phrase to refer to the currently applicable version of the federal law. But, in construing Oregon statutes, we do not read individual phrases in isolation; rather, we examine them in context. *See, e.g., Stevens v. Czerniak,* 336 Or 392, 401, 84 P3d 140 (2004) ("[T]ext should not be read in isolation but must be considered in context."). That "context" includes, among other things, other parts of the statute at issue. *Lane County v. LCDC,* 325 Or 569, 578, 942 P2d 278 (1997) ("[W]e do not look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole.").

In this case, the context of ORS 118.010(2) speaks directly to the issue and is contrary to the interpretation that plaintiff advances. As we have noted, in response to the congressional phase-out of the federal estate tax, the Oregon legislature amended the state inheritance tax statutes so that, in all cases in which a decedent dies on or after January 1, 1998, any reference to the federal tax law "means the federal Internal Revenue Code as amended and in effect on December 31, 2000." ORS 118.007. The state death tax credit that the IRS calculated in this case was based on the then-current version of the Internal Revenue Code, not the version of the federal law in effect on December 31, 2000. The IRS determination of the state death tax credit is, therefore, irrelevant to the calculation of the estate's state inheritance tax liability under ORS 118.010(2).

We turn to ORS 118.100(1), on which plaintiff also relies. The statute provides that "[t]he tax provided for in ORS 118.010 shall be paid to the Department of Revenue on the date the federal estate tax is payable." ORS 118.100(1). Plaintiff contends that, even if the estate is obligated to pay state inheritance tax under ORS 118.010(2), under ORS 118.100(1), that tax is not due until any federal estate tax is payable. In this case, plaintiff contends, no federal estate tax is yet payable, as confirmed by the IRS audit.

Plaintiff is correct that, under ORS 118.100(1), any state inheritance tax must be paid when a federal estate tax is "payable." But the federal estate tax becomes "payable" only by reference to some version of the Internal Revenue Code. Her argument that no federal estate tax is payable in this case relies on the assumption that the relevant version of the Internal Revenue Code is the then-current version that the IRS applied in its audit. Under ORS 118.007, however, whenever the state inheritance tax statutes refer to the Internal Revenue Code, the reference is to the version of the code in effect on December 31, 2000. The IRS audit, based on a later version of the Internal Revenue Code, is irrelevant.

That reading of ORS 118.100(1) is confirmed by a closer examination of the phrasing of the statute. That phrasing makes clear that what must be paid is "the tax provided for in ORS 118.010," which, as we have just noted, is the tax that is "equal [to] the maximum amount of the state death tax credit" as determined by reference to federal estate tax law in effect on December 31, 2000. That state inheritance tax, in turn, must be paid when "the federal estate tax is payable." By the use of the definite article, the statute suggests that "the federal estate tax" that is payable is the one that was the basis for the determination of the state death tax credit that has just been mentioned, that is, the federal tax law in effect on December 31, 2000. That understanding is consistent with the legislature's use of the phrase "the federal estate tax" in both ORS 118.100(1) and ORS 118.010(2). *Tharp v. PSRB*, 338 Or 413, 422, 110 P3d 103 (2005) ("When the legislature uses the identical phrase in related statutory provisions that were enacted as the part of the same law, we interpret the phrase to have the same meaning in both sections.").

Plaintiff's contrary reading of ORS 118.100(1) would create the anomaly that an estate could incur a state inheritance tax obligation under ORS 118.010(2), but the department could not require plaintiff to pay it. Plaintiff concedes that her construction of ORS 118.100(1) "may deprive the State of some inheritance tax revenue which the legislature hoped to capture by statutory amendments" in 2003. Statutory provisions, however, must be construed, if possible, in a manner that "will give effect to all" of them. *Powers v. Quigley*, 345 Or 432, 438, 198 P3d 919 (2008) (quoting ORS 174.010). By interpreting the phrase "the federal estate tax" in ORS 118.100(1) consistently with that same phrase in ORS 118.010(2), we avoid that anomaly and allow for the enforcement of an estate's inheritance tax obligation as the legislature intended.

At oral argument, plaintiff insisted that, even under the version of the federal estate tax law that existed on December 31, 2000, no federal estate tax is due. According to plaintiff, that is because of a "mandatory extension of its due date" under IRC § 2032A(c)(4), pertaining to the family farm exemption from federal estate taxation.

To begin with, that argument is contrary to the position plaintiff took in the Tax Court, where she expressly conceded, for the purposes of the pending summary judgment motions, the correctness of department's assessment of the estate's tax liability under pre-2001 federal law, including section 2032A. Moreover, plaintiff is mistaken as to the effect of the exemption. As we have explained, under section 2032A, the taxable value of an estate may be reduced by the farm exemption. But any remaining value remains subject to federal estate taxation. Thus in this case, as the department concluded, subtracting the section 2032A exemption from the fair market value of the farm left a net taxable estate in excess of $854,100. Under the version of the federal tax law in effect on December 31, 2000, the estate owed federal estate tax on that value. The only "mandatory extension" applied to taxation on the portion of the value of the property that was exempt under section 2032A.

We therefore conclude that the Tax Court correctly determined that, under ORS 118.010(2) and ORS 118.100(1),

the estate owed $26,767 in Oregon inheritance tax, plus penalties and interest, and that the department was entitled to summary judgment in its favor.

The judgment of the Tax Court is affirmed.