624 September 24, 2025 No. 841

***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVEN LEE DENT,
*Defendant-Appellant.*

Multnomah County Circuit Court
22CR30208; A182204

Adrian L. Brown, Judge.

Argued and submitted June 24, 2025.

Stacy M. Du Clos, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Kyleigh Gray, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Reversed and remanded.

**JACQUOT, J.**

Defendant appeals a judgment convicting him of felony attempt to elude (vehicle), ORS 811.540; driving under the influence of intoxicants, ORS 813.010; driving while suspended, ORS 811.182; misdemeanor attempt to elude (on foot), ORS 811.540; and reckless driving, ORS 811.140. He raises three assignments of error. Because we are persuaded by defendant's first assignment of error challenging the denial of a motion for mistrial after the prosecutor's comments during opening statement about defendant's exercise of his right to remain silent, we reverse.

Defendant was observed in his Portland neighborhood driving his truck at a high rate of speed. A patrol car signaled defendant to pull over, using emergency lights. Defendant initially pulled onto the side of the road, but then began driving again, leading a police officer on a slow-speed pursuit through his neighborhood and into his driveway. Along the way, he veered into the opposite lane for a brief time. Once in his driveway, he exited and attempted to enter his front door before being apprehended by the officer. He left his dog secured in the truck.

First, defendant challenges the denial of his motion for mistrial based upon the prosecutor's statement implicating his right to remain silent. Midway through his opening, after summarizing the evidence he expected to come in at trial in the driving under the influence case, the prosecutor encouraged the jury to draw a negative inference based on defendant exercising his right to remain silent. The prosecutor stated,

"And then when he got to his house he jumped out of the car and ran for the door, trying to get inside before the police could get to him, which is where the elude—felony elude, fleeing from the police while in a car, and misdemeanor elude, fleeing on foot from the car afterwards, come into play.

"Then after he was caught *he first refused to say whether or not he understood his [M]iranda rights.* Finally, they later reminded him of his rights and all he could say is that he had to get home—he didn't say that he had to get home for some emergency, just that he wanted to get home."

(Emphasis added.) While considering defendant's motion for mistrial, the trial court determined that the statement was improper. The state does not defend the statement, but argues that the court's offer of a curative instruction would have been sufficient to cure the problem. Defendant argued that he was offering a choice of evils defense—that defendant feared for the safety of his aggressive dog which might have thought the officer was a threat and may have caused the officer to injure it to protect himself—and the statement about his initial silence would detract from the effectiveness of the defense. Defendant argued that the state knew he was going to offer the defense based upon pretrial litigation about which charges the defense could apply to. Defendant argues that this is the type of error that is almost impossible to cure and that mistrial was the only viable remedy. *State v. Swanson*, 293 Or App 562, 565, 429 P3d 732 (2018). For those reasons, defendant argues he was denied a fair trial.

We review a denial of a motion for mistrial for abuse of discretion. *State v. Osorno*, 264 Or App 742, 747, 333 P3d 1163 (2014). A trial court abuses its discretion if the defendant does not receive a fair trial. *Id.* "Reference to a defendant's exercise of a constitutional right jeopardizes the right to a fair trial if the jury was likely to infer that the defendant had exercised the right because he believed that he was guilty of the charged offense." *State v. Schumacher*, 315 Or App 298, 301, 500 P3d 698 (2021); *see also State v. Ashbaugh*, 330 Or App 680, 685-86, 544 P3d 414, *rev den*, 372 Or 588 (2024) ("[A] prosecutor may not refer to a defendant's silence with impunity and we presume that reference was harmful.").

An improper comment on defendant's exercise of a constitutional right is reviewed in context. *Schumacher*, 315 Or App at 302. Unless the surrounding context of the improper prosecutor remark "draw[s] the jury's attention away from the inference of guilt, a mistrial may be necessary." *Id.* at 304. The absence of any curative instruction is part of the context that we consider. *Id.* at 305. The length of an improper comment may also be viewed as part of the context, though that an improper statement is brief does not necessarily mean a mistrial is unwarranted—we have

previously reversed in cases like this even when the reference to the exercise of a right is a "single statement apparently unintentionally elicited." *Id.* at 304. We reversed a case on similar facts with this type of error in *State v. Veatch*, 223 Or App 444, 196 P3d 45 (2008).

In this case, we do not believe the brevity of the improper comment on defendant's right to remain silent is the most significant factor, in part, because the state's entire opening statement was relatively brief, as was the trial, which lasted only a few days. *See State v. Avdeyev*, 309 Or App 205, 212, 482 P3d 115 (2021) (rejecting an argument made by the state—that erroneous vouching statements that "occurred only five times during a lengthy trial with 30 witnesses" rendered the impropriety harmless). More important aspects of context in this case are: the potential impact that the prosecutor's improper comment likely had on jurors, whether the surrounding statements made by the prosecutor drew the jury's attention away from a negative inference, and whether actions by the court mitigated the impropriety.

In context, that the prosecutor said defendant "refused" to confirm whether he "understood his *Miranda* rights," without providing any information about what *Miranda* rights are or that one of those rights is a fundamental right to remain silent, some jurors may have believed that defendant was acting inappropriately in response to a directive from an officer, rather than simply exercising one of the rights explained to him during the *Miranda* warning. Moreover, the state implied from the balance of its commentary ("not because of some emergency") about the substance of defendant's later statements that defendant was guilty because if he had a real defense he would have explained immediately. The prosecutor did not follow with a statement that would discourage jurors from drawing a negative inference, rather, the prosecutor immediately followed by saying, "He also nodded to the officers that he knew that his license was suspended, which means that he knew he legally shouldn't be driving that day, at all."

In reviewing the entirety of the prosecutor's opening statement, we cannot say that the prosecutor drew the

jury's attention away from making an inference of guilt based on defendant's right to remain silent. *Cf. State v. Perez*, 373 Or 591, 609, 568 P3d 940 (2025) (that the prosecutor followed a reference to the defendant's exercise of his right to jury trial by stating that everyone has an absolute right to a criminal trial and the state has the obligation of proving the case to the jury weighed against reversal). Though an improper statement at the end of trial may be particularly damaging due to the impact it has on jurors before deliberation, *see*, *e.g.*, *State v. Chitwood*, 370 Or 305, 318, 518 P3d 903 (2022) ("[B]ecause it was the last thing the jury heard, its impact was likely to have been significant ***."), we are persuaded by defendant's argument that in this particular instance, particularly in light of defendant's choice of evils defense, that "every piece of evidence moving forward" may have been tainted by an improper view of defendant elicited by the prosecutor. Lastly, although the court agreed with defendant that the statement was improper, the court ultimately did not mitigate the negative impact of the prosecutor's improper remark. The court offered to cure any negative inference that might be drawn by the jury with an instruction, defendant declined, arguing that the "only appropriate remedy is mistrial," and the court did nothing.

The state argues that the prejudice from the prosecutor's improper statement could have been cured by an instruction, as the trial court offered to give, and that defendant's refusal precludes him from being able to argue that mistrial was warranted. We considered a similar argument in *Schumacher* and attached little significance to the defendant's refusal. *Schumacher*, 315 Or App at 305-06. Even if the court offers an appropriate instruction, if it does not negate the potential inference of guilt, the instruction may be insufficient to "unring the bell." *Veatch*, 223 Or App at 461. *Schumacher* concludes that when a trial court does nothing in the face of an error like this, it would be error to affirm. 215 Or App at 307. For the foregoing reasons, we reverse and remand on defendant's first assignment of error.

In his second assignment of error, defendant argues that there was insufficient evidence to prove he committed the offense of eluding on foot, because there was no evidence

in the record that he did so on premises open to the public as he was in his private driveway when he got out of the car and fled to his front door. His argument is unpreserved. The state responds that there was plenty of evidence that the offense began on premises open to the public, and the question of whether all of the elements of the offense must occur on premises open to the public is subject to statutory interpretation and beyond the reach of plain error analysis. We agree with the state that defendant's proposed interpretation of the statute is beyond the reach of our plain error review. It is not obvious and beyond reasonable dispute that the statute must be understood in the way proposed by defendant. *See State v. Reyes-Camarena*, 330 Or 431, 435, 7 P3d 522 (2000) (providing the plain error review standards).

Finally, we turn to defendant's third assignment of error—that felony and misdemeanor attempt to elude should merge for conviction and sentencing. We decide this issue because it is likely to occur in retrial. This preserved argument was made in the trial court as two distinct contentions. First, defendant argued that merger does not require a complete overlap in elements when the legislature intended only a single statutory provision, citing *State v. Slatton*, 268 Or App 556, 343 P3d 253 (2015). Second, he argued that the evidence did not show a significant pause to justify two separate convictions, otherwise, the misdemeanor should merge into the felony. The state responds that the legislature intended to create two separate offenses, directed at separate risks and carrying separate penalties. We have recently agreed based upon the legislative history of ORS 811.540(1)(b)(A) and (B). *State v. Farnham*, 341 Or App 787, ___ P3d ___ (2025). The trial court appropriately imposed two separate convictions here.

Reversed and remanded.